# 22-2916

## United States Court of Appeals
## for the Second Circuit

JAVELL FOX,

*Plaintiff-Appellant,*

v.

OFFICER SANTIAGO CRUZ, Eastern New York Correctional Facility,

*Defendant-Appellee,*

SUPERINTENDENT WILLIAM A. LEE, Eastern New York Correctional Facility, et al.

*Defendants.*

*(For full caption, see inside front cover.)*

On Appeal from the United States District Court
for the Northern District of New York

**BRIEF FOR DEFENDANT-APPELLEE**

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Defendants-Appellees
The Capitol
Albany, New York 12224
(518) 776-2046

BARBARA D. UNDERWOOD
  *Solicitor General*
ANDREA OSER
  *Deputy Solicitor General*
    *of Counsel*

Dated: June 1, 2023

JAVELLE FOX,

*Plaintiff-Appellant,*

v.

OFFICER SANTIAGO CRUZ, Eastern New York Correctional Facility,

*Defendant-Appellee,*

SUPERINTENDENT WILLIAM A. LEE, Eastern New York Correctional Facility,
LIEUTENANT EDWARD MADISON, Eastern New York Correctional Facility,
SERGEANT DUNCAN BEY, Eastern New York Correctional Facility, OFFICER
WILLIAM KOZAK, Eastern New York Correctional Facility, OFFICER JASON
WAUGH, Eastern New York Correctional Facility, SERGEANT JASON CONNOR,
Eastern New York Correctional Facility, CAPTAIN WILLIAM WEBBE, Eastern New
York Correctional Facility, ANTHONY RUSSO, Correction Deputy Superintendent
Security, Eastern New York Correctional Facility, LIEUTENANT KARL SIMMONS,
Eastern New York Correctional Facility, ROSEMARIE WENDLAND, Correction
Deputy Superintendent Administration, Eastern New York Correctional
Facility, OFFICER STUART MILLER, Eastern New York Correctional Facility,
DEPUTY KENNETH CALAO, Eastern New York Correctional Facility, C. JENNINGS,
Correction Steward, Eastern NY Correctional Facility, DIANE LABATTE,
Correction Steward, Eastern New York Correctional Facility, GOVERNOR
ANDREW CUOMO, New York State, ANTHONY J. ANNUCCI, Department of
Corrections and Community Supervision Commissioner, OFFICER RICHARD
HENRY, Eastern New York Correctional Facility, SERGEANT LIFIELD, Eastern
New York Correctional Facility, SERGEANT BRADLEY, Eastern New York
Correctional Facility, OFFICER ROBERT O. WILLIAMSON, Eastern New York
Correctional Facility, LIEUTENANT PATRICK SULLIVAN, Eastern New York
Correctional Facility, SERGEANT TONY VANACORE, Eastern New York
Correctional Facility, SERGEANT PAUL BARG, Eastern New York Correctional
Facility, OFFICER SCHADEL,

*Defendants.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................iii

PRELIMINARY STATEMENT ......................................................1

ISSUES PRESENTED ...................................................................3

STATEMENT OF THE CASE .........................................................3

    A.    Plaintiff's Alleged Injuries ...............................................3

        1.    Harassment for Hairstyle ....................................4

        2.    Conditions in Keeplock Confinement ..............12

        3.    Sexual Harassment ...........................................14

        4.    Access to Courts ................................................15

    B.    Plaintiff's Grievances .....................................................16

        1.    ECF 26147-14 ...................................................16

        2.    ECF 26187-15 ...................................................17

        3.    ECF 26198-15 ...................................................19

        4.    ECF 26197-15 ...................................................20

        5.    ECF 26217-15 ...................................................21

    C.    Proceedings in the District Court ...................................22

        1.    Summary Judgment ..........................................23

        2.    Motion to File Second Amended Complaint....................25

        3.    Motions for Contempt .......................................27

**Page**

SUMMARY OF ARGUMENT ................................................. 28

STANDARD OF REVIEW ...................................................... 31

ARGUMENT ...................................................................... 32

POINT I

SUMMARY JUDGMENT WAS PROPER ON NEARLY ALL OF
DEFENDANTS' CLAIMS BASED ON PLAINTIFF'S FAILURE TO
EXHAUST HIS ADMINISTRATIVE REMEDIES ........................... 32

    A.    Plaintiff Failed to Exhaust All Claims That He Either
Did Not Grieve or Did Not Fully Exhaust by Failing to
Appeal Adverse Grievance Decisions to CORC. ................... 34

    B.    Plaintiff Fully Exhausted Claims Related to His
Remaining Grievances. ............................................ 43

POINT II

THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTION TO
FILE A SECOND AMENDED COMPLAINT ................................ 44

POINT III

THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTIONS
FOR CONTEMPT .............................................................. 47

CONCLUSION ................................................................. 51

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Alemite Mfg. Corp. v. Staff,*
42 F.2d 832 (2d Cir. 1930) .................................................................. 48

*Bey v. City of New York,*
999 F.3d 157 (2d Cir. 2021) ............................................................... 31

*Booth v. Churner,*
532 U.S. 731 (2001) ........................................................................... 33

*Cicio v. Wenderlich,*
714 F. App'x 96 (2d Cir. 2018) .......................................................... 36

*Cresswell v. Sullivan & Cromwell,*
922 F.2d 60 (2d Cir. 1990) ................................................................. 46

*Davis v. Barrett,*
576 F.3d 129 (2d Cir. 2009) ............................................................... 41

*Fox v. Labatte,*
2016 WL 1266958 (N.D.N.Y. Mar. 31, 2016) ................................... 19

*Fox v. Labatte,*
2016 WL 8716662 (N.D.N.Y. Mar. 11, 2016) ................................... 19

*Green v. Bauvi,*
46 F.3d 189 (2d Cir. 1995) ................................................................... 6

*Hayes v. Dahlke,*
976 F.3d 259 (2d Cir. 2020) ................................................... 2, 30, 43

*Jin v. Metro. Life Ins. Co.,*
310 F.3d 84 (2d Cir. 2002) ................................................................. 32

*Jones v. Bock,*
549 U.S. 199 (2007) ..................................................................... 33, 40

*Meiselman v. Byrom,*
144 F. App'x 164 (2d Cir. 2005) .................................................. 45, 48

**Cases**                                                          **Page(s)**

*Nat'l Spiritual Assembly of Bahá'ís of U.S. Under Hereditary
    Guardianship, Inc. v. Nat'l Spiritual Assembly of U.S.,
    Inc.,*
    628 F.3d 837 (7th Cir. 2010) ...................................................... 49

*Niagara Mohawk Power Corp. v. Hudson River-Black River
    Regulating Dist.,*
    673 F.3d 84 (2d Cir. 2012) ............................................... 45, 48

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.,*
    681 F.3d 114 (2d Cir. 2012) ...................................................... 32

*Pasternack v. Shrader,*
    863 F.3d 162 (2d Cir. 2017) ...................................................... 46

*People of State of New York by Vacco v. Operation Rescue
    Nat.,*
    80 F.3d 64 (2d Cir. 1996) .......................................................... 48

*Porter v. Nussle,*
    534 U.S. 516 (2002) .................................................................... 32

*Ross v. Blake,*
    578 U.S. 632 (2016) .................................................................... 37

*Salahuddin v. Coughlin,*
    781 F.2d 24 (2d Cir. 1986) ........................................................ 42

*Smith v. Dodge,*
    835 F. App'x 645 (2d Cir. 2021) .............................................. 37

*United States v. United Mine Workers of Am.,*
    330 U.S. 258 (1947) .................................................................... 32

*Waters v. Melendez,*
    783 F. App'x 56 (2d Cir. 2019) ........................................... 41, 42

**Federal Statutes**                                                    **Page(s)**

42 U.S.C.
 § 1983 ............................................................................... 1, 4

Religious Land Use and Institutionalized Persons Act, 42
 U.S.C.
 § 2000cc *et seq*. ................................................................... 23

**Federal Rules**

Fed. R. App. Proc. 28 .............................................................. 45

Fed. R. Civ. Proc.
 12 ......................................................................................... 23
 15 ......................................................................................... 45
 21 ......................................................................................... 45
 65 ......................................................................................... 27

**State Regulations**

7 N.Y.C.R.R.
 § 253.8 ................................................................................. 41
 § 301.1 ................................................................................... 6
 § 301.2 ................................................................................... 6
 § 301.6 ................................................................................... 6
 § 701.3 ............................................................................ 25, 41
 § 701.5 .......................................................................... passim

# PRELIMINARY STATEMENT

Plaintiff Javell Fox is an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Between 2014 and 2015, he was housed at the Eastern Correctional Facility. Plaintiff alleges that while at Eastern, he experienced constitutional violations primarily stemming from harassment and retaliation for wearing his hair in a dreadlocked mohawk, a hairstyle he alleges is associated with his religion and is thus constitutionally protected. Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983 seeking damages from individual officers and employees of Eastern for his alleged injuries.

The United States District Court for the Northern District of New York (McAvoy, J.) granted defendants summary judgment on all but one of plaintiff's claims. It held that plaintiff had failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA") to pursue his civil rights claims in court. The district court allowed plaintiff's sole exhausted claim to proceed to trial, where plaintiff was awarded $5000 in compensatory damages.

This Court should affirm nearly all of the district court's summary judgment decision, which is brought up for review on plaintiff's appeal from the final judgment entered in this case. The district court properly granted defendants summary judgment on all claims that plaintiff either did not grieve at the facility level or did not fully exhaust by appealing adverse decisions of the facility's superintendent to the Central Office Review Committee ("CORC"). This Court's intervening decision in *Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020), however, establishes that plaintiff *did* administratively exhaust available remedies in one of his grievances, which he appealed to CORC but on which he had not received a decision when he filed the present suit. And the other grievance plaintiff appealed to CORC was decided by CORC before plaintiff added claims related to that grievance in his amended complaint. Accordingly, this Court should reverse the district court's decision granting summary judgment on the claims raised in those two grievances and remand them to the district court.

To the extent plaintiff purports to challenge other decisions of the district court, he has abandoned those challenges by failing to make any

argument contesting the district court's decisions and, in any event, the district court's decisions were correct.

## ISSUES PRESENTED

1.    Does the record establish that plaintiff failed to exhaust his administrative remedies as to three of his five grievances, either because he failed to file a grievance pertaining to alleged injuries or because he failed to appeal adverse determinations of the Superintendent to CORC?

2.    Has plaintiff abandoned his appeals of the district court's orders denying his motion to file a second amended complaint and his motions for contempt by failing to argue in his opening brief that those decisions were decided incorrectly?

3.    Alternatively, did the district court reasonably deny plaintiff's motion to file a second amended complaint and motions for contempt against nonparties?

## STATEMENT OF THE CASE

### A.    Plaintiff's Alleged Injuries

Plaintiff Javell Fox is in the custody of the New York State Department of Corrections and Community Supervision. From September 2014

until October 2015, he was housed at Eastern Correctional Facility. (Defendants' Statement of Undisputed Facts ("Undisputed Facts"), ECF No. 174-2, ¶ 3.)[1] His complaint alleges that he was subjected to multiple constitutional violations during his time at Eastern, primarily stemming from his choice of hairstyle.[2]

## 1.  Harassment for Hairstyle

Plaintiff alleges that he maintains a hairstyle with religious significance. During his time at Eastern, he suffered repeated instances of harassment and retaliation because of his haircut, including the issuance of multiple misbehavior reports, some of which resulted in disciplinary penalties.

On or about November 7, 2014, plaintiff alleges that Lieutenant Madison directed plaintiff to cut his hair because it was shaved on the

---

[1] All citations to "ECF No.__" correspond to docket filings in the district court in this case, unless otherwise indicated.

[2] The facts relevant to plaintiff's underlying claims are those alleged in his complaint (the truth of which is presumed here). This is so, because plaintiff's appeal challenges the summary judgment dismissal of most of his § 1983 claims for failure to exhaust administrative remedies, defendants moved for summary judgment only on the basis of that exhaustion defense, and plaintiff does not challenge the sufficiency of the damages award rendered after trial.

sides and dreadlocked in a mohawk style. (Amended Complaint ("AC"), ECF No. 75, ¶ 1.) Plaintiff refused, citing his right to freedom of expression and free exercise of religion. (AC ¶ 1.) Thereafter, non-party Correction Officer Skred issued plaintiff a misbehavior report charging him with refusing a direct order. (AC ¶ 2.) In a subsequent disciplinary hearing, plaintiff was found not guilty based on his constitutional right to exercise his religion through his hairstyle. (AC ¶ 4.) According to plaintiff, Lieutenant Madison was upset about the not-guilty disposition of plaintiff's disciplinary hearing, and Officer Cruz told Lieutenant Madison that he would write plaintiff another misbehavior report because of his hairstyle. (AC ¶ 5.)

On December 7, 2014, Officer Cruz directed Officers Williamson and Waugh to frisk plaintiff. (AC ¶¶ 6-8.) Officer Williamson pat frisked and strip frisked plaintiff, including by ordering him to remove his religious headwear and shake his hair out. Officer Williamson then searched plaintiff's cell, allegedly stating that he was searching plaintiff's cell because of plaintiff's hairstyle. (AC ¶¶ 10-13.) Officer Waugh issued plaintiff a misbehavior report for having altered pants, which had slits in them that could be used to hide contraband, as well as for violating a

direct order by not cutting his hair. (AC ¶ 14.) At a disciplinary hearing, Lieutenant Simmons found plaintiff guilty of having altered pants and not guilty of refusing a direct order. (AC ¶ 16.) Plaintiff alleges that he should not have been found guilty of having altered pants and that Lieutenant Simmons only found him guilty "to satisfy his obligation to his peers' feelings and urge to see plaintiff punished." (AC ¶ 16.) Lieutenant Simmons sentenced plaintiff to 30 days in keeplock,[3] and 30 days' loss of commissary, recreation, packages, and phone privileges. (AC ¶ 17.) Plaintiff was also sent for urinalysis allegedly as an outcome of the hearing. (AC ¶ 19.)

Plaintiff filed a grievance about the alleged harassment, and Captain Webbe was assigned to investigate plaintiff's claims of harassment by Lieutenant Madison and Officers Cruz, Williamson and Waugh. (AC ¶¶ 18, 20.) Plaintiff accuses Captain Webbe of "covering up" misconduct by the above-named defendants. (AC ¶¶ 21-22.) Plaintiff

---

[3] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995); *see also* 7 N.Y.C.R.R. § 301.6 (repealed 2023). Disciplinary use of keeplock status is no longer allowed except in extremely rare circumstances. *See* 7 N.Y.C.R.R. §§ 301.1, 301.2.

wrote a letter complaining of Captain Webbe's alleged covering up of misconduct, and Superintendent Lee assigned Deputy Superintendent of Security (DSS) Russo to investigate. (AC ¶ 24.) Plaintiff alleges that DSS Russo also covered up misconduct in his investigation, and plaintiff wrote a grievance complaining about DSS Russo. (AC ¶¶ 25-26.)

At some point in early 2015, plaintiff was called out to see Lieutenant Madison in connection with grievances plaintiff had written about Officer Cruz.[4] (AC ¶ 65.) Lieutenant Madison ordered plaintiff to remove his religious headgear and told Sergeant Vanacore to write plaintiff a misbehavior report for his hairstyle. (AC ¶¶ 67-68.) On March 6, 2015, Officer Cruz also wrote plaintiff a misbehavior report because of his hairstyle. (AC ¶¶ 69-70.) The misbehavior reports charged plaintiff with untidy behavior and refusing a direct order to cut his hair. (AC ¶ 70.)

Lieutenant Simmons held a hearing on both misbehavior reports. (AC ¶ 71.) Plaintiff alleges that Lieutenant Simmons said that his

---

[4] The events leading to these grievances are discussed below under "Sexual Harassment."

supervisors told him to find plaintiff guilty of the offenses charged, which he did. (AC ¶ 71.)

Plaintiff alleges that in January 2015, Captain Webbe sent Sergeant Bey to threaten plaintiff with a Tier III misbehavior report if he did not cut his hair. (AC ¶ 74.) Sergeant Bey wrote plaintiff a Tier III misbehavior report, which was forwarded for a hearing. (AC ¶¶ 77-78.) That hearing was conducted by Deputy Superintendent of Administration (DSA) Wendland. (AC ¶ 79.)

According to plaintiff: Sergeant Bey told DSA Wendland that Captain Webbe sent him to threaten plaintiff. (AC ¶ 82.) DSA Wendland lied and stated that plaintiff's hair was both braided and in dreadlocks. (AC ¶ 79.) Plaintiff further alleges that DSA Wendland disregarded the testimony of plaintiff's witness who was employed at the prison as a counselor and also had dreadlocks. (AC ¶¶ 76, 79.) And, plaintiff alleges, DSA Wendland "went out of her way to call witnesses against plaintiff" (AC ¶ 78[5]) and ultimately found plaintiff guilty of the misbehavior charged (AC ¶¶ 82, 84).

---

[5] The amended complaint has two paragraphs numbered 78. The citation here is to the second such paragraph.

At some point, Sergeant Vandacore wrote plaintiff a Tier II misbehavior report for refusing to cut his hair. (AC ¶ 109.) Plaintiff alleges that Lieutenant Madison told Sergeant Vandacore to write the report. (AC ¶ 109.) Lieutenant Simmons held a hearing on the report and found plaintiff guilty, allegedly telling plaintiff that the lieutenant's supervisors told him to find plaintiff guilty. (AC ¶¶ 110-11.) After the hearing, Lieutenant Simmons asked why plaintiff had an injury to his forehead. (AC ¶ 113.) When plaintiff explained that he had been sexually and physically assaulted by Officer Cruz, *see infra* at pp. 13-15, Lieutenant Simmons told plaintiff to stop writing grievances because the system does not work. (AC ¶¶ 113-114.) Plaintiff was moved out of Officer Cruz's unit that afternoon. (AC ¶ 115.) Plaintiff alleges that that night he suffered a mild heart attack because of the retaliation he had experienced. (AC ¶¶ 116-119.)

Around April 27, 2015, plaintiff was written up for refusing a direct order and grooming standards. (AC ¶ 124.) Lieutenant Sullivan conducted a hearing and allegedly told plaintiff that although there was nothing wrong with his hair, he should cut it because Lieutenant

Madison did not like it. (AC ¶ 124.) Lieutenant Sullivan gave plaintiff 30 days in keeplock. (AC ¶ 124.)

On or around May 2, 2015, Lieutenant Madison told plaintiff that he could not believe plaintiff still had "that stupid haircut," and instructed non-party Lieutenant Geminez to write plaintiff a misbehavior report. (AC ¶ 120.) On or around May 15, Captain Webbe held a hearing for the misbehavior report. (AC ¶ 121.) Plaintiff alleges that Captain Webbe said that Superintendent Lee sent Webbe to hold the hearing so that he could "slam plaintiff real good" as a retirement gift. (AC ¶¶ 121-122.) Captain Webbe ordered that plaintiff be stripped of his Koran, religious paperwork, along with books and magazines. (AC ¶ 123.) Plaintiff alleges that Superintendent Lee became aware on or about May 27 that plaintiff was being denied his reading materials but took no action in response. (AC ¶ 127.) On or about June 1, 2015, non-party Officer Calotti issued plaintiff a misbehavior report for having books and magazines, one of which was a religious magazine. (AC ¶ 144.) Around June 12, Lieutenant Simmons gave plaintiff 30 days keeplock for the misbehavior report. (AC ¶¶ 145-46.)

On or around June 16, DSS Russo denied plaintiff the right to attend services for Ramadan, allegedly out of retaliation. (AC ¶¶ 125-26.)

On June 18, 2015, plaintiff was scheduled to be released from keeplock. (AC ¶ 128.) However, Lieutenant Simmons changed plaintiff's release date to July 18, 2015. (AC ¶ 128.) Plaintiff alleges that at least three times in all, Lieutenant Simmons gave plaintiff extra days in keeplock for no reason, resulting in a total of 72 additional days in keeplock. (AC ¶ 129.)

On July 18, 2015, when plaintiff left keeplock, he was told by Officer Vanderhelde to get against the wall because of his hairstyle. (AC ¶¶ 130-132.) Officer Vanderhelde allegedly pat frisked plaintiff aggressively and made plaintiff take off his shoes while Sergeant Bey stood by laughing and questioned plaintiff about his current lawsuit. (AC ¶¶ 132-33.)

Plaintiff alleges that on or around August 2, 2015, Sergeant Barg and Officer Krantz planted marijuana on plaintiff to retaliate against his civil suit and hairstyle-related grievances. (AC ¶ 134.) Sergeant Barg placed plaintiff in legal custody on the day of the hearing so that plaintiff would not be able to prepare a defense with legal cases, directives, or questions to ask witnesses. (AC ¶ 135.) Non-party Charles Barnard was

the hearing officer, and he denied plaintiff's request to postpone the hearing and denied plaintiff the right to call witnesses. (AC ¶¶ 136-37.) Plaintiff alleges that Sergeant Barg admitted that he took marijuana from "the locker" and planted it on plaintiff. (AC ¶ 139.) Plaintiff still received 50 days in keeplock for the misbehavior report. (AC ¶ 141.)

### 2. Conditions in Keeplock Confinement

Plaintiff alleges that while he was in keeplock stemming from his December 2014 penalty for altering his pants, he was kept in a cell that did not have a proper tray slot and he was forced to climb up the bars of his cell door to get his food trays. (AC ¶ 28.) He alleges that Officers Henry and Vanalken, along with non-party Officer Cotton, refused to unlock his cell to deliver his food trays. (AC ¶ 28.) On December 23, plaintiff fell while climbing up his cell to get his food, resulting in him needing medical attention, spending three days in the medical unit, and walking with a cane for six weeks afterward. (AC ¶¶ 28-34.) He also alleges that he suffers migraine headaches and seizures as a result of the fall. (AC ¶ 104.) When plaintiff was released from the medical unit, he was moved to a different cell that did not require him to use steps. (AC

¶ 35.) He alleges that he wrote a grievance about his injury and, as a result, was subsequently moved to a cell with a food tray. (AC ¶¶ 36-41.)

Plaintiff alleges that during January 2015, he was subjected to two weeks of extremely cold weather while a window in his unit was being fixed and was not given blankets or clothing for additional warmth. (AC ¶ 42.) Plaintiff alleges that he was also forced to wear the same pair of pants for 30 days and was denied the right to clean his clothes or his cell. (AC ¶ 44.) Plaintiff does not identify any individual DOCCS employees as allegedly responsible for these conditions. When plaintiff filed grievances to complain about the conditions, the heat was turned on and plaintiff was moved to a different cell. (AC ¶ 45.)

Plaintiff also alleges that he was improperly denied a phone call by Officer Henry and Sergeant Lifield while he was waiting for a misbehavior hearing to occur. (AC ¶ 46.) And on March 11, 2015, he alleges that he was again denied a phone call by Officer Schadel and Sergeant Bradley. (AC ¶¶ 86, 89.) Plaintiff was denied these phone calls so that he could not alert his family to the constitutional violations he was experiencing. (AC ¶ 90.)

### 3. Sexual Harassment

Meanwhile, on January 26, 2015, plaintiff was transferred to Eastern's west wing. (AC ¶ 47.) Plaintiff alleges that as soon as plaintiff arrived in the west wing, Officer Cruz began harassing him. (AC ¶¶ 48-49.) On January 27, Officer Cruz escorted plaintiff to a meeting with a mental health counselor. (AC ¶¶ 50-51.) On the return escort, plaintiff alleges that Officer Cruz "sexually frisked" him by "go[ing] up plaintiffs testicles and penis as he searched plaintiffs body" and "pull[ing] plaintiffs legs in a way to seem as if he was being kinky and a dominatrix." (AC ¶¶ 51-52.) Plaintiff wrote a grievance about the sexual behavior and requested to be moved out of the west wing. (AC ¶¶ 53-55.) Although plaintiff was moved to an upstairs cell, he alleges that this area was also controlled by Officer Cruz. (AC ¶ 56.) Plaintiff received a misbehavior report from Officer Kozak on January 30, 2015, allegedly in retaliation for reporting Officer Cruz's sexual harassment. (AC ¶¶ 56-57.)

On February 12, 2015, Officer Cruz escorted plaintiff to another hearing. (AC ¶ 57.) Officer Cruz allegedly told plaintiff to get against the wall, pulled his pants down, grinded his penis against plaintiff's buttocks, groped plaintiff's penis and testicles, and said to plaintiff "I forgot your

14

pussy hurts." (AC ¶ 58.) Plaintiff alleges that he wrote a grievance about the issue and spoke directly to Superintendent Lee about moving out of Officer Cruz's area but was denied. (AC ¶¶ 60-63.)

Plaintiff alleges that Officer Cruz continued to be "perverted" toward plaintiff, including by opening plaintiff's cell door while plaintiff was naked, allowing other incarcerated individuals to observed plaintiff naked, and looking into plaintiff's cell. (AC ¶¶ 63-64.) On March 25, 2015, Officer Cruz allegedly looked in plaintiff's cell and told him to "be good and stop talking" or he would be silenced. (AC ¶ 91.)

On an unspecified date, Officer Cruz told plaintiff to "get the fuck on the wall," at which point Officer Cruz allegedly pulled plaintiff's pants up into the crack of plaintiff's buttocks, kicked plaintiff's feet, rubbed his hands up plaintiff's penis, and then banged plaintiff's head on the wall. (AC ¶ 105.) After plaintiff returned to his cell, Officer Cruz told plaintiff that he couldn't wait for plaintiff to go to another jail so that Officer Cruz "could get plaintiff stabbed the fuck up." (AC ¶ 108.)

### 4.  Access to Courts

Plaintiff alleges that Deputy of Programs Diane Labatte, along with E. Jennings, refused to give plaintiff "copies" to file an Article 78

15

proceeding in state court to challenge the misbehavior reports that he received. (AC ¶¶ 97-98.)

## B. Plaintiff's Grievances

Plaintiff submitted multiple grievances about some but not all these events. Many of those grievances were consolidated, resulting in a total of five grievances, which together comprise all of the grievances that plaintiff filed while housed at Eastern. (Undisputed Facts ¶ 5.)

### 1. ECF 26147-14

On December 10, 2014, plaintiff filed an initial grievance complaining about retaliation and harassment by Officers Cruz, Williamson, and Waugh and non-party Officer Skred on account of his hairstyle. (Undisputed Facts ¶¶ 6-7; Grievance Packet, ECF No. 174-14, at 30-33.) Plaintiff subsequently filed letters about Captain Webbe's alleged role in covering up that alleged misconduct, letters that were consolidated into the same grievance. (Grievance Packet at 34-36, 40-42.) Other letters consolidated into the same grievance concerned DSS Russo's alleged lack of respect for plaintiff's religious hairstyle

(Grievance Packet at 37-39) and additional alleged harassment by Officer Cruz (Grievance Packet at 43).

Superintendent Lee denied plaintiff's grievance on December 24, 2014. (Undisputed Facts ¶ 9; Grievance Packet at 44.) Plaintiff appealed the decision to the Central Office Review Committee ("CORC") on December 29. (Undisputed Facts ¶ 10.) CORC denied plaintiff's appeal on April 29, 2015. (Undisputed Facts ¶ 12; CORC Decision, ECF No. 174-11, at 1.) This was after plaintiff commenced this litigation on April 2, 2015, and it was also beyond the 30 days that DOCCS provides for CORC to decide administrative appeals, N.Y. Comp. Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R.") § 701.5(d)(3)(ii).

### 2. ECF 26187-15

On January 15, 2015, plaintiff filed a grievance concerning several issues, including an incident on December 23 in which he was "aggressive[ly] frisked" by an officer and threatened by Sergeant Bey with a Tier III ticket if he did not cut his hair that week. (Grievance Packet at 129.) Plaintiff also grieved:

- the cold temperature of his cell due to open windows (Grievance Packet at 130),

- the lack of a slot for his food tray (Grievance Packet at 130, 133-34),

- the confiscation of plaintiff's pants (Grievance Packet 134),

- the lack of adequate assistance in preparing for a disciplinary hearing (Grievance Packet at 131), and

- the denial of his phone privileges on January 7 (Grievance Packet at 132).

The IGRC denied plaintiff's grievance on February 4, 2015. (Grievance Packet at 111.) The denial states that officers made every attempt to distribute food in a timely manner and that the living standards in plaintiff's cell during an ongoing window renovation project met minimum standards of DOCCS Directive # 4009. (Grievance Packet at 111.) The IGRC further concluded that plaintiff's remaining concerns were "outside the purview of this committee." (Grievance Packet at 111.)

Plaintiff appealed the IGRC's decision on February 5, 2015, writing on the form, "any issue out of purview please forward to CORC." (Grievance Packet at 111.) Eastern staff properly sent the appeal to Superintendent Lee, who denied plaintiff's grievance on March 19, 2015. (Grievance Packet at 110.) DOCCS has no record that plaintiff appealed Superintendent Lee's decision to CORC. (Undisputed Facts ¶ 22; Declaration of Anthony Black ("Black Decl."), ECF 174-13, ¶ 21.)

18

### 3.   ECF 26198-15

On January 26, 2015, plaintiff filed a grievance complaining that Diane Labatte had not sent out his legal mail with the advance disbursement he needed to cover postage, that his legal mail had not been returned to him, and that Eastern's administrators were not properly processing his grievance related to mail issues. (Grievance Packet at 2-8.) Plaintiff filed an additional letter on February 24 complaining that Labatte had not provided him with "copies," which had caused him to miss a civil filing deadline. (Grievance Packet at 13-14.)

The IGRC denied plaintiff's grievance on February 4, 2015. (Grievance Packet at 16.) Plaintiff appealed the decision to the Superintendent. (Grievance Packet at 17.) Superintendent Lee denied the grievance on April 9, 2015. (Grievance Packet at 1.) DOCCS has no record that plaintiff appealed the Superintendent's decision to CORC.[6] (Undisputed Facts ¶ 22; Black Decl. ¶ 17.)

------

[6] In an earlier-filed action, the U.S. District Court for the Northern District of New York concluded that plaintiff had not yet exhausted his administrative remedies with respect to this grievance because, when he filed his complaint, his appeal to the Superintendent had only just been filed and remained pending. *See Fox v. Labatte*, 2016 WL 8716662, at *3

*(continued on the next page)*

**4. ECF 26197-15**

On January 26, 2015, plaintiff filed a grievance related to the Tier III misbehavior report that he received on January 4. (Grievance Packet at 143.) Plaintiff alleged that Lieutenant Sullivan, Sergeant Bey, and Captain Webbe conspired to write him a misbehavior report because of his religious hairstyle in order to have him removed from the facility. (Grievance Packet at 143-45.) He further stated that DSA Wendland failed to be impartial during the misbehavior hearing, lied on the hearing record, and inquired into irrelevant matters. (Grievance Packet at 146-147.) In a letter consolidated into the same appeal, plaintiff accused IGRC Supervisor Mauro of denying plaintiff's due process right by impeding plaintiff from procedurally exhausting his administrative remedies with respect to his Tier III misbehavior report. (Grievance Packet at 148-149.)

The IGRC denied plaintiff's grievance on January 30, 2015, advising plaintiff that all of the actions he requested were "outside the

---

(N.D.N.Y. Mar. 11, 2016) (report and recommendation), *adopted*, *Fox v. Labatte*, 2016 WL 1266958 (N.D.N.Y. Mar. 31, 2016).

purview of this committee." (Grievance Packet at 140.) Plaintiff appealed the decision on February 3, 2015, requesting that his appeal of the IGRC's decision be taken directly to CORC rather than the Superintendent because the Superintendent had a conflict of interest. (Grievance Packet at 140.) The appeal was sent to the Superintendent, who denied plaintiff's grievance on March 19, 2015. (Grievance Packet at 137.) Superintendent Lee reminded plaintiff that "he need not file a grievance regarding disciplinary decisions to exhaust his 'administrative remedies.' He can utilize the disciplinary appeal mechanism which extends beyond the facility. . . . Records indicate the MBR in question was affirmed on appeal." (Grievance Packet at 137-38.) DOCCS has no record that plaintiff appealed the Superintendent's decision to CORC. (Undisputed Facts ¶ 22; Black Decl. ¶ 26.) And plaintiff has never suggested that he declined to pursue one on account of the opinions of the IGRC and the Superintendent that he could pursue the issues he appeared to be raising through the disciplinary appeal process.

### 5.   ECF 26217-15

On February 23, 2015, plaintiff filed a grievance complaining of retaliation and sexual harassment by Officers Cruz, Rodriguez, and

Kozak as well as Sergeant Cerciari. (Undisputed Facts ¶¶ 16-17; Grievance Packet at 170-175.) Specifically, plaintiff accused Officer Kozak of writing a retaliatory misbehavior report about him (Grievance Packet at 170); Officer Cruz of sexually assaulting him on January 27, 2015 (Grievance Packet at 172) and on February 12, 2015 (Grievance Packet at 173, 176); Officer Rodriguez of sexually harassing him (Grievance Packet at 174); and Sergeant Cerciari of failing to do an adequate investigation (Grievance Packet at 175).

Superintendent Lee denied plaintiff's grievance on April 21, 2015. (Undisputed Facts ¶ 18; Grievance Packet at 169.) Plaintiff appealed the decision to CORC on April 24, 2015. (Undisputed Facts ¶ 19; Grievance Packet at 169.) CORC upheld the determination in a decision on July 8, 2015, which was beyond the 30-day regulatory period that DOCCS provides for CORC to decide administrative appeals. (CORC Decision, ECF No. 174-12, at 180.)

## C.    Proceedings in the District Court

On April 2, 2015, plaintiff filed the present suit in the U.S. District Court for the Northern District of New York. (Complaint, ECF No. 1.) His 111-page amended complaint, the operative complaint here, seeks

damages from 24 defendants[7] in their individual capacities for a purported 155 claims asserting violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. Defendants timely filed an answer to the amended complaint. (*See* ECF No. 82.)

## 1. Summary Judgment

While discovery was ongoing, plaintiff moved for summary judgment on his claims and defendants cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) based on plaintiff's failure to administratively exhaust his claims. (*See* ECF Nos. 111, 118.) The magistrate judge to whom the matter was assigned issued a report and recommendation that both motions be denied. (ECF No. 144.) The district court subsequently accepted the report and recommendation and denied both motions. (ECF Nos. 157, 161.) The district court specified that its denial of defendants' motion to dismiss was without

---

[7] Three of these defendants were dismissed by the district court *sua sponte* before service of process and thus are not parties to this appeal. (*See* ECF Nos. 10, 77.)

prejudice to renewal, either in a combined motion to dismiss and summary judgment limited to the issue of exhaustion or by way of an exhaustion hearing, should one be requested. (ECF No. 157, at 2.)

Defendants thereafter moved for summary judgment on the limited issue of exhaustion. (ECF 174.) Plaintiff opposed, filing only a memorandum of law and declaration in support of his opposition. (ECF Nos. 184-1, 184-2.)

The magistrate judge issued a report and recommendation that defendants' motion for summary judgment be granted on all claims except plaintiff's claims of sexual assault by Officer Cruz. (Report and Recommendation ("RR"), ECF No. 215, which the district court subsequently adopted in full, ECF No. 218.) With the exception of those claims against Officer Cruz, the district court concluded that plaintiff had failed to exhaust his administrative remedies, as required under the PLRA. Of the five consolidated grievances plaintiff filed at Eastern, three had not been appealed to CORC and therefore were not exhausted. (RR at 12-13, 15.) With respect to the remaining two grievances, the district court concluded that plaintiff failed to exhaust his administrative remedies before filing suit because plaintiff filed his initial complaint in

24

this action before CORC issued a decision on the grievance.[8] (RR at 13-15, 16-18.) However, because plaintiff satisfied the more limited exhaustion procedure required for claims of sexual abuse under the Prison Rape Elimination Act of 2003, *see* 7 N.Y.C.R.R. § 701.3(i), the district court concluded that plaintiff's claims of sexual assault by Officer Cruz should not be dismissed. (RR at 23-24.)

Those claims thus proceeded to a jury trial, in October 2022. The jury returned judgment in favor of plaintiff, concluding that Officer Cruz violated plaintiff's Eighth Amendment rights on January 27, 2015, and again February 12, 2015. (ECF No. 329, at 2.) The jury awarded plaintiff $5000 in compensatory damages and no punitive damages. (ECF No. 329, at 2-3.)

### 2. Motion to File Second Amended Complaint

Meanwhile, on January 18, 2018—while plaintiff's motion for summary judgment and defendants' cross-motion for judgment on the

---

[8] The district court appears to have overlooked that, as to one of those two grievances, plaintiff did not assert any claims arising from that grievance in his initial complaint, but rather asserted those claims for the first time in his amended complaint of December 19, 2016, by which time CORC had decided his administrative appeal.

pleadings remained pending—plaintiff moved to file a second amended complaint. (Pl. Mot. to Amend, ECF No. 142.) Plaintiff sought to add 78 new claims and 20 new defendants to his case. (Pl. Mot. to Amend at 1-2; *see also* Magistrate Judge's Order ("MJ Order"), ECF No. 160, at 10-11 (outlining new claims and parties).) Most of plaintiff's additional claims and defendants related to occurrences at facilities other than Eastern in which plaintiff resided after October 2015, including Great Meadows Correctional Facility, Five Points Correctional Facility, and Attica Correctional Facility. (*See* Proposed Sec. Am. Compl., ECF No. 142-2.)

The magistrate judge issued a memorandum decision and order denying the motion to amend. (*See generally* MJ Order.) The report and recommendation concluded that many of the proposed claims would be futile (MJ Order at 13-20, 22-25) and that, in any event, plaintiff had waited an inordinate amount of time to move to file an amended complaint and plaintiff's filing of a second amended complaint would prejudice defendants (MJ Order at 21-22, 26). Plaintiff appealed the magistrate judge's order to the district court (ECF No. 197), and the district court affirmed the decision (ECF No. 212, at 4-6, 8).

### 3.  Motions for Contempt

In May 2017, the parties in this case stipulated that plaintiff would be allowed to maintain his current hairstyle pending the outcome of the present litigation, and the district court so-ordered that stipulation. (ECF No. 95.) Plaintiff subsequently filed five motions for contempt against non-party DOCCS employees who worked at Attica Correctional Facility, Great Meadows Correctional Facility, and Auburn Correctional Facility for failing to abide by the stipulation. (*See* ECF Nos. 117, 129, 130, 131, 138.) In February 2018, the magistrate judge issued a report and recommendation that plaintiff's motions for contempt should be denied. (Report & Recommendation on Mots. For Contempt ("Contempt RR"), ECF No. 145.) The report and recommendation concluded that the non-parties named by plaintiff were not subject to the court's order on the parties' stipulation because these DOCCS employees were not the named defendants' "officers, agents, servants, employees, [or] attorneys" within the meaning of Federal Rule of Civil Procedure 65(d)(2)(B) and had not aided or abetted the named defendants. (Contempt RR at 6-12.) The district court adopted the report and recommendation in full and denied plaintiff's motions for contempt. (ECF No. 157.)

27

On September 4, 2018, plaintiff filed another motion for contempt. (ECF Nos. 200, 200-1.) Plaintiff alleged that an officer at Auburn Correctional Facility (where plaintiff then resided) had placed him in keeplock as punishment for wearing his hair in a mohawk despite a court order forbidding them from doing so. (ECF No. 200-1, ¶¶ 3-6.) Plaintiff requested monetary fines against the officer. (ECF No. 200-1, ¶ 9.) The magistrate judge issued a report and recommendation that plaintiff's motion should be denied for the same reasons he had previously recommended denying plaintiff's earlier contempt motions. (Second Report & Recommendation on Pl. Mot. for Contempt, ECF No. 216.) The district court adopted the report and recommendation and denied plaintiff's motion. (ECF No. 218, at 7, 9.)

## SUMMARY OF ARGUMENT

The district court's decisions should largely be affirmed. The district court correctly concluded that defendants were entitled to summary judgment on most of plaintiff's claims because he failed to exhaust his administrative remedies, as required by the PLRA. Many of plaintiff's claims in the present suit were not the subject of any grievance filed with prison administrators at Eastern. And many more of his claims

were raised in grievances that were not fully exhausted because plaintiff did not appeal the denials of those grievances to CORC, which is the final step in DOCCS's grievance process.

Plaintiff's arguments about why he did not need to exhaust these claims all fail. Although plaintiff's submissions to the district court vaguely suggest that he was prevented from appealing grievances to CORC, the subject references are insufficient to raise a genuine question of material fact about whether plaintiff was actually impeded from pursuing such appeals. In addition, plaintiff is wrong to suggest that some of the issues he grieved were resolved informally at the facility level and thus did not need to be exhausted further. Because the Superintendent concluded that there was no wrongdoing by Eastern staff with respect to the issues grieved, plaintiff was required to administratively appeal that determination to CORC before seeking damages in court for the wrongdoing he alleged. And while an alternative exhaustion process was available to plaintiff to press discrete due process claims arising from the various disciplinary proceedings convened against him to the extent he sought to do so, that alternative process was not available to address the claims that are the gravamen of plaintiff's complaint here,

29

namely claims of retaliation and harassment based on the filing of misbehavior reports.

On the other hand, the district court's decision granting summary judgment should be reversed as to any claims related to the issues contained in the two grievances that plaintiff did appeal to CORC. As to the first grievance, the 30-day period in which CORC was required to decide plaintiff's appeal had passed with no decision from CORC by the time plaintiff initiated this litigation. This Court has since held that an incarcerated individual in plaintiff's position has properly exhausted his administrative remedies once CORC's 30-day regulatory time limit to render a decision has expired. *See Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020). And CORC had rendered a decision on plaintiff's other grievance, albeit a belated one, before plaintiff filed his amended complaint in this action, which added claims related to this grievance for the first time.

Plaintiff also purports to appeal from orders of the district court denying his motion to file a second amended complaint and motions for contempt against non-parties to this suit. Plaintiff has abandoned these challenges by not making a single argument as to either of them in his

opening brief. In any event, the district court acted well within its discretion to deny plaintiff leave to file a second amended complaint that added over 70 new claims and 20 new defendants after the parties had almost entirely completed discovery and while a motion for summary judgment was pending. Allowing such a late filing would have prejudiced defendants and created extreme delay in resolving the case. The district court also reasonably denied plaintiff's motions for contempt against non-party DOCCS employees at facilities other than Eastern. As the district court correctly concluded, those non-parties were not bound by the parties' so-ordered stipulation to allow plaintiff to maintain his hairstyle during the pendency of this litigation because they were not acting in concert with any named defendant and were not legally identified with the named defendants.

## STANDARD OF REVIEW

This Court reviews a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor. *Bey v. City of New York*, 999 F.3d 157, 164 (2d Cir. 2021). This Court reviews the denial of leave

to amend a complaint for abuse of discretion, unless the denial was based on an interpretation of law, in which case review of the legal conclusion is *de novo*. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012); *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). A district court's decision denying a litigant's motion for civil contempt is reviewed for abuse of discretion. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947).

## ARGUMENT

### POINT I

**SUMMARY JUDGMENT WAS PROPER ON NEARLY ALL OF DEFENDANTS' CLAIMS BASED ON PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

The Prison Litigation Reform Act ("PLRA") requires that an incarcerated individual exhaust any administrative remedies available before bringing an action for claims arising out of his or her incarceration. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement applies to all suits by incarcerated individuals, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Further, an individual must exhaust administrative remedies even if

32

what the individual ultimately seeks is relief that is not obtainable through the administrative process, such as monetary damages. *See Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001). The purposes of exhaustion include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

To properly exhaust administrative remedies, an incarcerated individual in DOCCS's custody is required to comply with DOCCS's three-tiered grievance process. 7 N.Y.C.R.R. § 701.5 (outlining grievance procedure).[9] The individual must first file a grievance with the institution's IGRC within 21 days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). The IGRC's representatives must then either resolve the grievance informally or conduct a hearing and issue a written decision. *Id.* § 701.5(b)(1)-(3). An adverse decision of the IGRC may be appealed to

---

[9] Contrary to plaintiff's assertions (Opening Br. 54-55, 61), the current regulations (which are also contained in DOCCS Directive #4040) are identical to those in place from 2014 to 2015 in all aspects relevant to this suit.

the Superintendent of the facility by completing, signing, and submitting the appeal section of the IGRC response form within seven days of the IGRC's written decision. *Id.* § 701.5(c). The Superintendent then has 20 days to render a decision on the grievance and return it to the grievant. *Id.* § 701.5(c)(3)(ii). If an individual receives an adverse decision from the Superintendent, the individual may appeal to the CORC by completing and signing the appeal section of Form 2133 and submitting it to the grievance clerk within seven days of receiving the Superintendent's decision. *Id.* § 701.5(d)(1). The CORC must then render a decision on the grievance within 30 days of receiving it. *Id.* § 701.5(d)(3)(ii).

In the present case, plaintiff failed to exhaust administrative remedies for all but a handful of his claims. Accordingly, summary judgment was proper on all but those select few claims.

## A. Plaintiff Failed to Exhaust All Claims That He Either Did Not Grieve or Did Not Fully Exhaust by Failing to Appeal Adverse Grievance Decisions to CORC.

At the outset, a number of claims raised in plaintiff's amended complaint were never mentioned in any of the grievances filed at Eastern. Plaintiff therefore failed even to initiate administrative remedies, let alone exhaust those remedies—with respect to these claims. Indeed, the

34

last grievance plaintiff filed at Eastern was filed in late February 2015.
(*See* Undisputed Facts ¶¶ 16-17; Grievance Packet at 170-75.) Any claims
concerning actions allegedly taken by defendants at Eastern after that
date were necessarily never raised in any grievance, and thus were not
properly exhausted at the administrative level. Thus, defendants were
entitled to summary judgment on the following categories of claims that
postdate all of plaintiff's grievances[10]:

- claims against Sergeant Vanacore for writing plaintiff a
  misbehavior report (AC ¶¶ 67-68),

- all claims related to plaintiff's alleged deprivation of reading
  materials (AC ¶¶ 123, 127, 144-146),

- claims related to plaintiff being denied leave to celebrate
  Ramadan (AC ¶¶ 125-26),

- claims pertaining to Sergeant Barg and Officer Krantz
  allegedly planting drugs on plaintiff (AC ¶¶ 134, 139),

- claims against officers for failing to allow plaintiff to use a
  telephone on March 11, 2015 (AC ¶¶ 86, 89), and

- claims against Officer Cruz for allegedly threatening
  plaintiff and sexually and physically assaulting him for a
  third time on or after March 23, 2015 (AC ¶¶ 105, 108).

---

[10] Because many of plaintiff's allegations are undated, this list of
unexhausted claims may not be all-inclusive.

In addition, summary judgment was proper on all claims plaintiff raised in grievances that he failed to appeal to CORC because he failed to fully exhaust these claims. All of the claims contained in plaintiff's grievances numbered ECF 26187-15 (concerning allegedly uncomfortable and/or potentially dangerous conditions in keeplock confinement), ECF 26198-15 (concerning issues with advances, legal mail, and copies), and ECF 26197-15 (concerning plaintiff's allegedly retaliatory Tier III misbehavior report) were not exhausted because plaintiff failed to complete step three of New York's administrative procedure by appealing adverse grievance determinations by the Superintendent to CORC. *See, e.g.*, *Cicio v. Wenderlich*, 714 F. App'x 96, 97-98 (2d Cir. 2018).

In his opening brief, plaintiff argues that he attempted to appeal each of these three unexhausted grievances to CORC but was prevented from doing so. (Opening Br. 58-59, 61.) However, plaintiff's brief provides only bare assertions about these alleged attempts, with no citation to the record explaining when or how he attempted to appeal the decisions or who if anyone prevented him from doing so. And the record itself is in any event insufficient to raise a question of fact on the issue.

To be sure, this Court has concluded that if prison employees prevent a plaintiff from using an administrative procedure, that procedure is rendered "unavailable" within the meaning of the PLRA, and no further administrative exhaustion is required. *See, e.g.*, *Smith v. Dodge*, 835 F. App'x 645, 646 (2d Cir. 2021) (citing *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)).

Nonetheless, to survive summary judgment, a plaintiff must provide evidence such as an affidavit setting forth "specific factual allegations" about how the plaintiff was prevented from exhausting administrative remedies. In *Smith*, for instance, this Court concluded that a genuine issue of material fact could exist as to whether grievance procedures were "unavailable" to a plaintiff who provided specific details about the dates on which he submitted grievances, conversations he had with another individual about his grievance and his concern that prison staff might intercept the grievances, and a copy of one of his grievances that he sent to his attorneys. 835 F. App'x at 647.

The record here contains no such specific evidence. Plaintiff's affidavit contains a broad statement that "[i]t is common practice with IGP Supervisors and Superintendent to fail to forward prisoners

37

grievances to CORC in an attempt to prevent prisoners from obtaining monetary damage rewards." (Fox Decl. ¶ 12.) Plaintiff's affidavit additionally states that the IGP Supervisor "failed to forward" his grievances against defendants Simmons, Madison, Cruz, Williamson, Bey, Wendland, Kozak, Waugh, Webbe, Russo, Lee, Miller, Vanacore, Sullivan, Connor, and Barg "in an attempt to cover up for high ranking officials." (Fox Decl. ¶ 10.) These statements, however, lack the specificity needed to raise a genuine question of material fact. And plaintiff's affidavit nowhere suggests in any event that he actually tried to appeal these grievances to CORC.

Indeed, if anything, the record suggests that plaintiff did not try to appeal the Superintendent's decisions in those grievances to CORC. Instead, plaintiff wrote on the IGRC determinations he received in two of them that he wished to appeal to CORC, expressly arguing in one that he should be permitted to skip the Superintendent's review. (*See* Grievance Packet at 111, 140.) Under DOCCS's regulations, however, plaintiff had to first appeal the IGRC's determination to Superintendent Lee. *See* 7 N.Y.C.R.R. § 701.5(c)(1). Consequently, the IGRC properly forwarded plaintiff's appeals from its determinations to the Superinten-

38

dent, who rendered decisions denying those appeals. (Grievance Packet at 110, 137.) Once plaintiff received the Superintendent's determinations, he was required to appeal *those* determinations to CORC by completing and signing DOCCS form #2133 and submitting it to the grievance clerk. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The record contains no evidence or even allegation that plaintiff ever sought to do so.

Plaintiff's affidavit additionally states that "IGP Mauro failed to file plaintiffs [sic] grievance for denial of access to the court, inmate legal assistance and copies by Deputy Calao," (Fox Decl., ECF No. 184-2, ¶¶ 4-5), an apparent reference to the issues raised in grievance ECF 26198-15. But plaintiff *did* file that grievance. (*See* Grievance Packet at 16.) And plaintiff's affidavit makes no allegation that plaintiff later tried but was thwarted in his attempt to file an appeal to CORC from a Superintendent's determination denying his appeal at step two of the grievance process.

Plaintiff also argues (Opening Br. 60) that he did not need to pursue appeals to CORC as his grievances alleging uncomfortable and/or dangerous conditions in keeplock confinement because the issues were favorably resolved at the facility level. Plaintiff's argument misunder-

stands the grievance procedure. While it is true that DOCCS allows for grievances to be informally resolved "to the satisfaction of the grievant," 7 N.Y.C.R.R. § 701.5(b)(1), such resolution does not absolve plaintiff of the need to fully exhaust all three steps of New York's grievance process before asserting Eighth Amendment claims against individual defendants seeking damages for deliberate indifference to a serious risk of harm. Plaintiff's conditions-related complaints were resolved only prospectively—he was moved out of the cold cell, moved to a cell with an opening for a food tray, and given pants to replace the ones taken from him—but both the IGRC and the Superintendent found no wrongdoing by any DOCCS employee in relation to plaintiff's complaints regarding those issues. (Grievance Packet at 110-11.) Plaintiff was thus required to appeal further, to CORC, before seeking damages for the alleged deliberate indifference of any individual defendants. Such exhaustion was required to give DOCCS (rather than Eastern's employees) an opportunity to investigate and address any wrongdoing by Eastern officers before the issue was brought to the courts. *See Jones*, 549 U.S. at 219.

Finally, plaintiff argues (Opening Br. 96-98) that his claims relating to the disciplinary proceedings convened against him did not need to be exhausted through the grievance procedure because an alternative exhaustion procedure was available. Plaintiff apparently refers to DOCCS's procedure for administratively appealing adverse disciplinary dispositions. *See* 7 N.Y.C.R.R. § 253.8; (*see also* Fox Decl. at 7). An incarcerated individual alleging violations of due process in a prison disciplinary proceeding exhausts available administrative remedies by administratively appealing the adverse disposition rendered against him at the hearing. *Davis v. Barrett*, 576 F.3d 129, 132-33 (2d Cir. 2009); *see also* 7 N.Y.C.R.R. § 701.3(e)(1) (an "individual decision or disposition" is not grievable if a written appeal mechanism exists).

Plaintiff was nonetheless required to utilize the grievance process to administratively exhaust his claims of retaliation and harassment based on the repeated filings of allegedly false misbehavior reports. As this Court has explained, the retaliatory filing of an allegedly false misbehavior report "plainly does not qualify" as a non-grievable "decision or disposition," within the meaning of 7 N.Y.C.R.R. § 701.3(e). *See Waters v. Melendez,* 783 F. App'x 56, 59 (2d Cir. 2019). Such a claim is therefore

41

grievable and, to be administratively exhausted for purposes of the PLRA, must be fully grieved through the grievance process. *Id.*[11]

As to potential due process claims asserted against the hearing officers who presided over plaintiff's disciplinary hearings, it is not clear from plaintiff's complaint and opposition to defendants' motion for summary judgment that plaintiff sought to pursue such claims. Even pro se litigants must make the nature of their claims clear at some point in the litigation. *Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir. 1986). The magistrate judge and the district court here may have understood plaintiff to be asserting due process defects in his various disciplinary hearings in service of his broader retaliation and harassment complaints, which, as noted, had to be exhausted through the grievance process. If the Court finds that plaintiff sufficiently preserved discrete due process claims, however, it should remand them to the district court, because the record in this case does not contain information about whether plaintiff

---

[11] Plaintiff also does not argue here that he was confused by DOCCS's regulations or misled by advice he received in connection with Grievance ECF 26197-15, which involved a Tier III misbehavior report.

exhausted those claims by administratively appealing the adverse disciplinary dispositions rendered against him.

## B.  Plaintiff Fully Exhausted Claims Related to His Remaining Grievances.

Two years after the district court decided defendants' summary judgment motion in this case, this Court held that an incarcerated individual fully exhausts administrative remedies in New York after appealing to CORC and then waiting until CORC's regulatory deadline for deciding appeals has passed before commencing suit. *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020). Even if CORC does not timely render a decision by that deadline, the incarcerated individual may file suit consistent with the PLRA. *Id.* Plaintiff filed the present suit more than 30 days after appealing one of his remaining grievances—ECF 26147-14—to CORC. While CORC ultimately decided plaintiff's appeal, it did not do so before the expiration of the regulatory 30-day deadline. Accordingly, plaintiff fully exhausted his claims related to this grievance, and this Court should reverse the district court's partial grant of summary judgment on these claims.

43

And plaintiff did not assert claims related to his final grievance—ECF 26217-15—until he filed his amended complaint in 2016, by which time CORC had rendered a decision on plaintiff's grievance. Accordingly, plaintiff had fully exhausted his administrative remedies for the claims raised in that grievance. However, grievance ECF 26217-15 largely concerns Officer Cruz's alleged sexual assault. As to that allegation, the district court denied summary judgment and allowed plaintiff to proceed to trial. Thus, the Court should reverse the grant of summary judgment and remand only so much of grievance ECF 26217-15 as raises claims other than Officer Cruz's alleged sexual assault.

## POINT II

### THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT

Plaintiff purports to challenge on appeal the district court's denial of his motion to file a second amended complaint. (Opening Br. 7, 49.) However, plaintiff does not provide a single argument as to why the district court's decision or the reasoning of the magistrate judge that the district court adopted was incorrect. By failing to do so, plaintiff abandoned this challenge on appeal. This Court has held that merely

stating an issue in an appellate brief, without more, is insufficient to preserve an issue for review. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012); *see also* Fed. R. App. Proc. 28(a)(8)(A) (requiring an appellant to state his "contentions and the reasons for them"); *Meiselman v. Byrom*, 144 F. App'x 164, 165 (2d Cir. 2005) ("Although we construe a *pro se* litigant's appellate brief and other pleadings liberally, and read them to raise the strongest arguments they suggest, vague, conclusory statements provide no basis for review." (citation omitted)).

In any event, the district court acted well within its discretion when it denied plaintiff's motion to file a second amended complaint because plaintiff's proposed amendment would have unduly delayed proceedings and prejudiced defendants. Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave" to amend a complaint "when justice so requires."[12] Nevertheless, a district court has discretion "to deny leave to amend where the motion is made after an inordinate delay, no

---

[12] The addition of new parties is also governed by Federal Rule of Civil Procedure 21, which allows a court to add or drop a party "at any time, on just terms."

45

satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). Further, a defendant establishes such prejudice where the new claims would require the defendant to expend significant additional resources to conduct discovery and prepare for trial or significantly delay resolution of the dispute. *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017).

Allowing plaintiff to file a second amended complaint would have caused serious prejudice to defendants. Plaintiff moved to file a second amended complaint in January 2018, which was nearly three years after plaintiff initially filed suit and more than a year after plaintiff filed his first amended complaint. The parties were already engaged in the exchange of discovery, including participating in discovery hearings before the magistrate judge. (*See* ECF Nos. 106, 110, 124.) Defendants had already conducted a lengthy deposition of plaintiff regarding all of the legal issues raised in plaintiff's operative pleading. (*See* ECF No. 174-4.) And at the time plaintiff filed his motion, the magistrate judge was in the process of ruling on plaintiff's motion for summary judgment and defendants' cross-motion for judgment on the pleadings for

failure to exhaust. (*See* ECF Nos. 111, 118.) The filing of a second amended complaint at this late stage, particularly a complaint that added more than 70 additional claims and 20 new defendants, would have rendered the parties' dispositive motions useless, resulted in extensive delay, and required the parties to engage in a significant amount of additional discovery. Accordingly, the district court did not abuse its discretion in denying plaintiff's motion to amend his pleadings.

## POINT III

### THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTIONS FOR CONTEMPT

Plaintiff additionally purports to challenge the district court's decisions denying his motions for contempt against non-party correction officials violating a court order.[13] (Opening Br. 7.) However, plaintiff once

---

[13] Plaintiff actually states that he is challenging the denial of *a motion* for contempt that was denied "on or around February 2019." (Opening Br. 7 (emphasis added).) His statement creates ambiguity as to which order he seeks to challenge here. The district court's first denial of plaintiff's motions for contempt was issued on March 6, 2018. (*See* ECF No. 157.) The district court's second order denying plaintiff's motion for contempt was issued on March 25, 2019. (*See* ECF No. 218.) Both district court decisions were decided on the same grounds, however. Thus, as a precaution, we assume that plaintiff intended to challenge both decisions.

47

more merely states that his contempt motions were denied without providing any reason why the district court's decisions were erroneous. (*See* Opening Br. 7, 51-53.) Because plaintiff has not made any argument calling into question the district court's decisions, he has abandoned his challenge on appeal to the denial of his contempt motions. *Niagara Mohawk Power Corp.*, 673 F.3d at 107; *Meiselman*, 144 F. App'x at 165.

In any event, the district court correctly declined to hold any non-party DOCCS employees in contempt for violation of the parties' so-order stipulation. Preliminarily, because these officers were not parties to the suit, they were not bound by the so-ordered stipulation that plaintiff be allowed to keep his hairstyle during the pendency of this litigation. Thus, a finding of contempt as to any of them required a showing that the subject non-party either abetted a named defendant in violating that so-ordered stipulation or is legally identified with a named defendant. *People of State of New York by Vacco v. Operation Rescue Nat.*, 80 F.3d 64, 70 (2d Cir. 1996); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930). Plaintiff made no such showing.

Plaintiff's motions for contempt were asserted against officers working at corrections facilities other than Eastern. Plaintiff did not

argue in either of his motions that the non-party officers were in contact with any of the named defendants, acted in concert with any named defendant, or even intended to aid or abet a named defendant. Rather, plaintiff alleged that these non-party officers, on their own, took actions similar to those that named defendants had allegedly taken previously— namely, punishing plaintiff for his hairstyle. Such allegations were insufficient to support a finding of contempt.

Nor did plaintiff establish that these non-party officers were legally identified with any named defendant. While this Court has not outlined a test for "legal identity," the Seventh Circuit has explained that "the 'legal identity' justification for binding nonparties is limited to those who have notice of the injunction and are so closely identified in interest with the enjoined party that it is reasonable to conclude that their rights and interests were adjudicated in the original proceeding." *Nat'l Spiritual Assembly of Bahá'ís of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of U.S., Inc.*, 628 F.3d 837, 841 (7th Cir. 2010). Here, there is no reason to believe that the individual officers working at other New York correctional facilities were so closely identified with the officers named in plaintiff's suit that their rights and interests were

adjudicated in the present action. Accordingly, the district court correctly denied plaintiff's motions for contempt.

## CONCLUSION

The district court's decision to grant summary judgment should be reversed as to plaintiff's claims arising from grievances ECF 26147-14 and ECF 26217-15, and the case should be remanded to the district court for further proceedings.

In all other respects, the district court's decision to grant summary judgment should be affirmed. The district court's decisions denying plaintiff's motion to file a second amended complaint and denying plaintiff's motions for contempt against non-parties should likewise be affirmed.

Dated: Albany, New York
       June 1, 2023

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
  Attorney for Defendants-Appellees

By:   */s/ Andrea Oser*
     ANDREA OSER
     Deputy Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
ANDREA OSER
  *Deputy Solicitor General*
    *of Counsel*

The Capitol
Albany, New York 12224
(518) 776-2046

51

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Andrea Oser, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 9,641 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

_/s/ Andrea Oser_